Michael NUKK, Frank Borich, Joseph Siminoff, Felix Kusman, Rose Lightcap, Ida Gottesman, Anna Taffler, Benny Saltzman, Bessie Geiser, Martin Young, Boris Sklar, Plaintiffs,

v.

Edward J. SHAUGHNESSY, District Director of the Third District of the Immigration and Naturalization Service of the Port of New York, Defendant.

Betty GANNET, Alexander Bittleman, Claudia Jones, Plaintiffs,

v.

Edward J. SHAUGHNESSY, District Director of the Third District of the Immigration and Naturalization Service of the Port of New York, Defendant.

United States District Court
S. D. New York.

Oct. 11, 1954.

Blanch Freedman, Gloria Agrin, New York City, for plaintiffs.

J. Edward Lumbard, U. S. Atty., New York City, for defendant; Harold R. Tyler, Jr., Harold J. Raby, Asst. U. S. Attys., and Lester Friedman, Atty., Immigration and Naturalization Service, New York City, of counsel.

Before MEDINA, Circuit Judge, and McGOHEY and WEINFELD, District Judges.

MEDINA, Circuit Judge.

The pleadings and issues in the fourteen actions before us are substantially the same. Each of the plaintiffs is an alien who has been ordered deported from the United States after appropriate administrative proceedings which none has sought to review by any judicial proceeding. The order of deportation in each case was based on an administrative finding that, after entering the United States, the plaintiff had been a member of the Communist Party of the United States. Final orders and warrants for the deportation of each of the plaintiffs have been outstanding for more than six months.

Three of the plaintiffs, namely, Gannet, Bittleman and Jones, have not been deported primarily because they were tried and convicted of violations of the penal provisions of the Smith Act, 18 U.S.C.A. § 2385, for conspiring to advocate the overthrow of the United States Government by force and violence. These plaintiffs have been sentenced to various terms of imprisonment and are now at liberty on judicial bond pending their appeals in the criminal action. With respect to the other eleven plaintiffs, they have not been deported by reason of the inability of the immigration authorities physically to effectuate deportation. Some of the plaintiffs are so-called "stateless persons"; others have been denied, temporarily at least, readmittance to the countries of their nativity or last residence prior to coming to the United States.

Since more than six months have elapsed from the entry of the final orders of deportation, the defendant has released the plaintiffs from custody on supervised parole in accordance with the express provisions of Section 242(d) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1252(d),[1] and the regulations promulgated thereunder, 8 C.F.R. § 242.3(c),[2] the constitutionality of which plaintiffs now seek to attack.

As may be seen, the regulations which have been promulgated under Section 242(d) of the Immigration and Nationality Act of 1952 closely follow the statutory language. Likewise, the orders of supervision pursuant to which the plaintiffs were released from custody on

[1]. Section 242(d) of the Immigration and Nationality Act of 1942, 8 U.S.C.A. § 1252(d), provides as follows:

"*Supervision of deportable alien; violation by alien.*

"(d) Any alien, against whom a final order of deportation as defined in subsection (c) of this section, heretofore or hereafter issued has been outstanding for more than six months, shall, pending eventual deportation, be subject to supervision under regulations prescribed by the Attorney General. Such regulations shall include provisions which will require any alien subject to supervision (1) to appear from time to time before an immigration officer for identification; (2) to submit, if necessary, to medical and psychiatric examination at the expense of the United States; (3) to give information under oath as to his nationality, circumstances, habits, associations, and activities, and such other information, whether or not related to the foregoing, as the Attorney General may deem fit and proper; and (4) to conform to such reasonable written restrictions on his conduct or activities as are prescribed by the Attorney General in his case. Any alien who shall willfully fail to comply with such regulations, or willfully fail to appear or to give information or submit to medical or psychiatric examination if required, or knowingly give false information in relation to the requirements of such regulations, or knowingly violate a reasonable restriction imposed upon his conduct or activity, shall upon conviction be guilty of a felony, and shall be fined not more than $1,000 or shall be imprisoned not more than one year, or both."

[2]. 8 C.F.R. § 242.3(c) provides as follows:
"(c) *Release; supervision after six months' period has expired; warning of penal provisions.*

"An alien against whom an order of deporation has been outstanding for more than six months shall, pending deportation, be placed under supervision by the district director, deputy district director, district enforcement officer, or officer in charge having administrative jurisdiction over the office in which the detention or release of such alien was authorized. An alien placed under supervision pursuant to this paragraph shall be advised of the penal provisions of section 242(d) of the Immigration and Nationality Act. Aliens placed under such supervision shall, among other things, be required to:

"(1) Appear from time to time at specified times or intervals before an officer of the Service for identification;

"(2) Submit, if necessary, to medical and psychiatric examination at government expense;

"(3) Give information under oath as to his nationality, circumstances, habits, associations and activities, and other information whether or not related to the foregoing as may be deemed fit and proper; and

"(4) Conform to such reasonable written restrictions on his conduct or activities as may be prescribed."

supervised parole substantially follow the language of the statute and the regulations, with the exception of certain restrictions with respect to plaintiffs' activities.[3] Although all of the plaintiffs have been notified by the defendant of the conditions of their parole under Section 242(d), they have refused to sign the written orders of supervision, copies of which are attached to their respective complaints.

Since the time of the plaintiffs' release from the custody of the defendant on supervised parole, no action of any kind with respect to any of the plaintiffs has been taken or threatened by the defendant. Moreover, as will be shown later in this opinion, the defendant has no authority to take any further action.

Following the issuance of the orders of supervision the plaintiffs commenced these actions in this Court, each respectively seeking a declaratory judgment and injunctive relief. The complaints ask that a declaratory judgment be made and entered declaring that Section 242 (d) of the Immigration and Nationality Act of 1952, the regulations promulgated thereunder, and the orders of supervision issued against the plaintiffs, are all "unconstitutional, invalid, illegal, void and inoperative," and declaring that the particular provisions of the orders of supervision "are unreasonable and an

---

3. The orders of supervision regulated and restricted the conduct and activity of each of the plaintiffs substantially as follows:

"Therefore, it is hereby ordered that such alien shall be placed under supervision and permitted to be and to remain at large upon the following terms:

"(1) That said alien shall produce himself, at time and place designated, for deportation pursuant to the order of deportation.

"(2) That said alien shall upon request produce himself at a time and place designated for the purpose of submitting to medical and psychiatric examination and/or to furnish such information as may be deemed fit and proper.

"(3-a) That said alien shall notify the Officer in Charge of the Immigration and Naturalization Service at the address shown in (4) hereof of any change in residence or employment, within the immigration district, within 48 hours after change is made.

"(3-b) That said alien shall apply to the Officer in Charge of the Immigration and Naturalization Service at the address shown in (4) for permission to change place of residence from one immigration district to another, at least 48 hours prior to such change.

"(4) That said alien shall report in (Person) on Thursday of each week, bet. 8:45 A.M. & 3:45 P.M. to the Officer in Charge of the Immigration and Naturalization Service at Ellis Island, New York Harbor, N. Y.

"(5) (a) That said alien shall terminate and remain disassociated from, membership in, if any, support or other activity, if any, in or in furtherance of the doctrines and policies of, the Communist Party of the United States, the Communist Political Association, the Communist Party of any state, or of any foreign state, or of any political or geographical subdivision of any state, any section, subsidiary, branch, affiliate, or subdivision of any such group or organization.

"(b) That such alien shall refrain from 'associating' with any person, knowing or having reasonable ground to believe that such person is a member of or affiliated with or is engaged in any promotion of any of the activities mentioned in subparagraph (a) above, provided that the term 'associating' as used in this subparagraph shall not be construed to include members of such alien's family or professional legal counsel if such associations are not used in furtherance of the doctrines, policies, or activities of any of the organizations or activities mentioned in subparagraph (a).

"(c) That said alien shall not violate Sec. 2385 of the 'Smith' Act of June 25, 1948 (Section 2385 of Title 18, U.S.Code) and Section 4 of the Internal Security Act of September 23, 1950 (Sec. 783 of Title 50, U.S.Code).

"(6) That said alien shall not travel outside a radius of 50 miles from Times Square, New York, N.Y., without written permission of an appropriate officer of the Immigration & Naturalization Service, New York District."

The orders of supervision vary in certain unimportant respects, e. g., in the numbering of the regulatory provisions, in the days on which each plaintiff is required to report, as to whether each plaintiff is to report in writing or in person, and, in some instances, the travel limitation of 50 miles is omitted.

abuse of discretion." The complaints further demand that an order be made and entered directing the defendant to set aside and cancel the orders of supervision, and that the defendant be enjoined from requiring the plaintiffs to obey the conditions of their supervised parole as contained in the orders of supervision.

The plaintiffs have moved, by means of orders to show cause issued at the same time the various complaints were filed, for temporary injunctions against the defendant pending the hearing and determination of the actions. In all cases, temporary restraining orders were issued by single judges of this Court, relieving plaintiffs from any obligation of compliance with the varying provisions of the orders of supervision, pending the hearing and determination of the plaintiffs' motions for temporary injunctions.

The defendant has cross-moved with respect to all fourteen complaints, asking the Court for an order (1) dismissing all of the complaints herein, pursuant to Rule 12(b) of the Rules of Civil Procedure, 28 U.S.C., for failure to state claims upon which relief can be granted and for failure to join an indispensable party; (2) vacating and dissolving the temporary restraining orders herein pursuant to Rule 65(b) of the Rules of Civil Procedure and Title 28 United States Code, § 2284(3); and (3) appointing a three-judge Court, in accordance with the provisions of Title 28 United States Code, §§ 2282 and 2284, to hear and determine the matters herein in issue.

The plaintiffs' attorneys offered no opposition to the defendant's application for the appointment of a three-judge Court, and, accordingly, on June 21, 1954, this statutory Court was designated in accordance with the appropriate provisions of Title 28 United States Code, § 2284. All of these actions, including the various motions, were heard together on June 30, 1954, pursuant to orders of this Court, dated June 21, 1954, and June 23, 1954, respectively, and extensive arguments were made by counsel for both sides. On July 27, 1954, the temporary restraining orders referred to above were modified in certain similar respects by an order of this Court, and, as so modified, continue to be outstanding against the defendant in all the cases.

The position of plaintiffs is untenable principally because there is no justiciable controversy between the parties. It is fundamental to declaratory judgment actions that there be an actual and existing dispute upon which the adjudicatory powers of the court can operate[4]; and it has long been settled law that the constitutional powers of the federal courts do not give them competence to render advisory opinions. And yet that is precisely what plaintiffs here would have us do.

The District Director is a subordinate official who has no power to take any further action with respect to these plaintiffs beyond what he has already done. His authority ceased with the issuance of the orders of supervision and the release of plaintiffs from custody on supervised parole. Nor is it claimed or alleged in any of the complaints that the District Director has in any manner threatened to take further action against plaintiffs or any of them. Nowhere is it alleged that any of the plaintiffs has violated the terms of the statute under attack. A wilful failure to comply with the regulations issued under Section 242(d) is a penal offense punishable upon conviction by imprisonment and fine. Thus if they refuse to comply with the conditions of their parole, it is the Attorney General or the United States Attorney for the district in which the parole conditions will have been violated who will determine whether or not plaintiffs or any of them should be prosecuted. For aught that now appears there may be no actual prosecution of any of these plaintiffs, and the factual background

---

**4.** Massachusetts v. Missouri, 1939, 308 U.S. 1, 17, 60 S.Ct. 39, 84 L.Ed. 3; Maryland Casualty Co. v. Pacific Coal & Oil Co., 1941, 312 U.S. 270, 272, 61 S.Ct. 510, 85 L.Ed. 826.

indispensable to the determination of any such prosecution, should it take place, is in futuro and as yet non-existent.

The principle involved here is, in substance, the same as that reaffirmed by the Supreme Court in United Public Workers of America (C. I. O.) v. Mitchell, 1947, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754. There, certain employees of the executive branch of the Federal Government and a union of such employees sued to enjoin the members of the Civil Service Commission from enforcing the provision of Section 9(a) of the Hatch Act, 5 U.S.C.A. § 118i, which forbade such employees to take "any active part in political management or in political campaigns" and for a declaratory judgment holding the Act unconstitutional. In denying declaratory relief to all but one of the employees, on the ground that they had failed to present a justiciable controversy, the Court pointed out that these employees did not allege that they had violated the Act, or that the Commission had actually threatened to interfere with their rights, but only that they desired to engage in acts of political management and in political campaigns and understood that if they engaged in this activity the Commission would order their dismissal from federal employment. A consideration of these factors compelled the Court to conclude that these employees "seem[ed] clearly to seek advisory opinions" as to whether or not they could act contrary "to the rule against political activity." As to these employees, the Court stated, 330 U.S. at pages 89–90, 67 S.Ct. at page 564:

"As is well known the federal courts established pursuant to Article III of the Constitution do not render advisory opinions. For adjudication of constitutional issues 'concrete legal issues, presented in actual cases, not abstractions' are requisite. This is as true of declaratory judgments as any other field. These appellants seem clearly to seek advisory opinions upon broad claims of rights protected by the First, Fifth, Ninth and Tenth Amendments to the Constitution. * * * [T]he facts of their personal interest in their civil rights, of the general threat of possible interference with those rights by the Civil Service Commission under its rules, if specified things are done by appellants, does not make a justiciable case or controversy.

\* \* \* \* \* \*

"The power of courts, and ultimately of this Court, to pass upon the constitutionality of acts of Congress arises only when the interests of litigants require the use of this judicial authority for their protection against actual interference. A hypothetical threat is not enough."

The Court decided that one employee, Poole, was entitled to a declaratory judgment, as his suit presented a justiciable controversy. In so deciding, the Court pointed out that Poole admitted that he had violated the Act, that he had been charged by the Commission with political activity, and that a proposed order for his removal had been issued by the Commission subject to his right to reply to the charges and to present further evidence in refutation.

Here, the lack of any actual and existing controversy between the parties plaintiff and defendant is too clear for reasonable debate, as defendant is not now nor will he ever be charged with the duty of enforcing this criminal statute.

Accordingly, the complaints are dismissed, plaintiffs' motions denied, and the temporary restraining orders vacated.